# Fisher et al., Board of Election Com'rs for Pendleton County, v. Booher et al.

(Decided June 25, 1937.)

SAWYER A. SMITH for appellants.

L. P. FRYER and R. P. DIETZMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—Affirming.

A local option election was held in Pendleton county, Ky., December 12, 1936, and the result of the election was a vote of 1,610 voting for local option and 1,578 voting against local option, a majority of 32 against the sale of intoxicating liquors in Pendleton county. Thereafter on January 2, 1937, Lloyd W. Booher and Wilson Wiggins, appellees, filed a petition in the Pendleton circuit court against the board of election commissioners contesting said local option election on the sole ground that the sheriff of the county did not have the notice of election published in some weekly newspaper published in the county, "for at least two weeks before the election," as provided in Kentucky Statutes, sec. 2554c-5. The sole question presented was whether the advertisement of the election was a substantial compliance with the statute, supra. The trial court sustained the grounds of contest and entered judgment holding the said election void, and from that judgment contestees have appealed.

That part of the contestant's petition relating to the publication of notice and advertisement of the election is as follows:

"Contestants say that said election held as aforesaid, and the result thereof, is null and void and of no effect because there was no publication in a newspaper of said county of said election for at least two weeks before the date of holding said election; that there is published in said county a weekly newspaper in which publication of said election could have been made for at least two weeks before holding the election therein, on the 12th day of December 1936, to-wit: 'The Falmouth Outlook, which has been published weekly for many years previous to the date of said election; that the first legal notice of said election in a newspaper published in said county appeared in the Falmouth Outlook on Friday, December 4, 1936, which was not two weeks before said election which was held on December 12, 1936.' "

The dates of the publication of the notice in the newspaper as set out in the petition quoted above, are admitted, and the only question presented on this appeal is the construction of Kentucky Statutes, sec. 2554c-5, which provides in part:

"It shall then be the duty of the said sheriff to have same [meaning copy of order calling election] published in some weekly or daily newspaper published in the county for at least two weeks before the election, and also to advertise same by written or printed handbills posted at not less than five conspicuous places in each precinct of the county for the same length of time when the election is held for the entire county."

The contention of appellant is thus stated by counsel in his brief as follows:

"That part of the above statute which says: 'For at least two weeks before the election', does not mean that the first publication in a newspaper in a county, wherein there is no daily paper, but only a weekly paper, issued once a week, must be fourteen days before the election, but, on the contrary, it means that such notice must be published in whatever weekly papers are published in the county for the two weeks next before the election. The 'written or posted handbills' must be for the entire two weeks, or fourteen days, because such posting is continuous."

The argument is that the word "week" has a definite and fixed meaning, and means seven days, beginning with Sunday and ending with Saturday night, and, therefore, the publication of the notice of the election in the paper on Friday December 4th, and December 11th, respectively, being in different weeks, that is, a Sunday having intervened between the two publications, the notice of election was published "two weeks" as required by the statutes.

In brief of appellant, counsel gives an interesting history of the word "week," including the definition of that word as defined in Webster's New International Dictionary; The Encyclopedia Britannica, the Roman Calendar; and the Supreme Court case of Ronkendorff v. Taylor's Lessee, 4 Pet. 349, 7 L. Ed. 882, and certain other foreign cases, some of which may tend to support appellant's contention but for our own construction of

the particular statute under consideration, and other like and similar statutes.

In the recent case of Cassady v. Jewell et al., 268 Ky. 643, 105 S. W. (2d) 810, decided by this court on May 18, 1937, one of the issues involved was the construction of section 2554c-5 of the statutes and we held that the phrase "for at least two weeks before the election" meant fourteen days before the election. That case is conclusive of the present one. However, our conclusions reached in that case are not without precedence of authority.

In the case of Hatfield v. City of Covington, 177 Ky. 124, 197 S. W. 535, 536, the phrase "for at least two weeks just preceding," was defined and elaborately discussed. The court held that the word "for" had the meaning of "throughout" or "during the continuance of," and that where there was a daily newspaper there must be a continuous publication of the notice in every issue of the official paper except Sunday, during the prescribed period of 14 days immediately before the election.

In the case of Jenkins v. City of Bowling Green, 251 Ky. 119, 64 S. W. (2d) 457, 458, the court said:

"But, as is disclosed in several of the opinions cited, although Sundays are to be counted in the period, it is not necessary or, indeed, proper that the publication should be made on those days. The same is true as to other days upon which there is no newspaper published in the city. So that, if there be only a weekly newspaper, the statute is satisfied by having the notice published consecutively in every issue, provided, however, that the first insertion is two weeks or more next preceding the letting of the contract."

It will be noticed in the above quotation that the first insertion of notice in the paper must be two weeks or more next preceding the letting of the contract. The phrase "two weeks or more" was used in the sense of or to mean fourteen days or more. As to the time of the first insertion of notice in the newspaper, there is no distinction between the daily newspaper and the weekly newspaper, because the first insertion, whether it be a weekly newspaper or daily newspaper, must be made at least two weeks prior to the election.

In Central Construction Co. v. City of Lexington,

162 Ky. 286, 172 S. W. 648, 651, where the statutory requirement was "for 'at least two weeks just preceding the election,'" it was held that publication of notice for only nine days just preceding the election was fatal to the validity of the election.

Many other cases could be cited, but we deem it unnecessary to give time and space to a multiplication of authorities. It will be seen that in a long line of decisions dating many years back, up to and including the recent case of Cassady v. Jewell et al., supra, the phrase "for at least two weeks" or "two weeks" and other similar expressions have been construed to mean fourteen days. It is true that in some circumstances and for certain purposes a week may mean a calendar week. But when dealing with publication of notice of a thing to be done it is commonly understood that the word "week" means seven days, and the words "two weeks" mean fourteen days. This is particularly true when dealing with notification of a special election. It is presumed that the people know when regular elections are to be held. For instance, the statutory primary election is held the first Saturday in August and, a regular or final election is held Tuesday after the first Monday in November, and it is not necessary to notify the people of such elections. But the statute prohibits the holding of a local option election on any regular election day, primary or final, and certain prescribed time previous and subsequent thereto, and for that reason it is necessary that the public have notice of the time of holding such elections, and the Legislature deemed it proper to provide ample time and opportunity for the public to be advised of such elections. If appellant's contention should prevail, then if an election were to be held on a Tuesday, publication of notice in the newspaper on Saturday and Monday next preceding the election, would be sufficient, although the first notice would be only three days before the election. It is not reasonable to presume that the Legislature intended such short time and manner of notice. In all the circumstances, it is perfectly reasonable, clear, and logical that the phrase, "for at least two weeks before the election," was intended to mean 14 days before the election.

The judgment is affirmed.